**WELCH et al. v. BROWN et al.**

No. 8265.

Court of Civil Appeals of Texas. Austin.

July 22, 1936.

Rehearing Denied Sept. 23, 1936.

Harris & Harris, of Austin, for plaintiffs in error.

W. Trenckmann, of Austin, for defendant in error Brown.

Hart, Patterson & Hart, of Austin, for defendant in error Low.

McCLENDON, Chief Justice.

W. H. Brown, joined by four of his five children, conveyed to Mrs. Stark, the fifth of said children, and her husband a nine-acre tract of land in Travis county, in partial payment of which the Starks executed (in addition to a $500 note which has been paid) four promissory vendor's lien notes, payable to the order of Brown, each in the principal sum of $722.37. The nine acres was community property of Brown and his wife, who died intestate November 6, 1930. May 6, 1932, Brown transferred these notes to Connolly, husband of one of his children. The transfer was without consideration. This suit was brought by all five of the children against Brown and Theodor Low, seeking the following relief:

1. To establish a one-tenth interest in said notes in each of the five children;

2. To annul any contract or agreement between Brown and Low regarding said notes, and removing cloud on plaintiffs' title to the extent of their alleged interest in the notes; and

3. To adjudge Connolly a trustee as holder of said notes for the benefit of plaintiffs and Brown, according to their respective interests.

In a supplemental petition, plaintiffs sought a correction of the deed from Brown to the Starks, so as to eliminate Mrs. Stark's alleged one-tenth interest in the nine acres, and to vest in Mrs. Stark said one-tenth interest, free from the vendor's lien securing said notes.

In a trial to the court without a jury, judgment was in favor of defendants.

The issues involved may be more readily understood by a chronological statement of the controlling facts.

The nine acres, purchased during the lifetime of Mrs. Brown, was encumbered by a $1,500 note, which Brown assumed as part of the consideration, and by a $600 vendor's lien note which Brown executed as part of the consideration. Some time prior to Mrs. Brown's death, Brown purchased a 58-acre tract in Travis county, which constituted their homestead at the time of her death. This property was encumbered with vendor's lien notes which Brown assumed as part of the purchase price. October 25, 1932, Low, who held the vendor's lien notes on the 58 acres which had been assumed by Brown, brought suit against Shelton, the maker of the notes, and for a personal judgment against each, and to foreclose the vendor's lien. Later Low dismissed Shelton from the case and recovered judgment against Brown upon his assumption of the notes, and for foreclosure of the vendor's lien. The property was sold under order of sale under this judgment, and after deducting the amount bid at the sale, there was left a deficiency judgment against Brown of about $2,000.

The testimony of some of the plaintiffs was to the effect that in the conveyance of the nine acres to Starks, it was agreed that the notes should be made payable to Brown alone; that he should collect the interest which was payable monthly, and the principal of the notes as it accrued, and use the proceeds for his support, but that he was not to dispose of the notes; that Brown did collect the interest and the $500 note, and used the proceeds. The total recited consideration for the deed was $8,000, represented by $2,000 cash, assumption of the outstanding indebtedness upon the property by the Starks, and the vendor's lien notes which they executed. The $2,000 cash represented funeral expenses of Mrs. Brown, which had been paid by the Starks, and expense in improving the land made by the Starks after Mrs. Brown's death and prior to the conveyance to them. The transfer of the notes to Connolly was made for the purpose of preventing the notes being reached by Low and subjected to Brown's debt to him.

■ The making of the notes payable to Brown, with the understanding that he was to be the beneficiary of the interest and principal, we think amounted to an executed gift on the part of the children to Brown of whatever interest of theirs passed in the transaction. However, it is not necessary to rest our decision upon this holding.

At the time of Mrs. Brown's death, there were community debts of the estate represented by the notes which Brown had assumed and executed as part of the purchase price of the two tracts of land. Additionally, the funeral expense was clearly a community debt. The expenses incurred by the Starks in improving the nine acres was also a community debt, if any debt at all, as it was expended for the benefit of the community estate. It was recognized as a valid obligation by Brown and all the children, and was paid through the conveyance as a part of the consideration.

■ It is contended by plaintiffs that Low never accepted Brown's assumption of the Shelton notes during Mrs. Brown's lifetime, and therefore such assumption did not constitute a community debt. This contention is not tenable. Brown's assumption was a valid personal obligation on his part in favor of Shelton, which Shelton could enforce whenever he was called upon to pay the notes. If Low had sued Shelton alone on the personal obligation, and sued Brown only to foreclose the lien, Shelton would have had the right to have a judgment over against Brown for any amount he might be called up-

on to pay on the notes, since Brown in assuming the payment of the notes had expressly obligated himself personally in the matter. This was clearly a community obligation. Low sued both Brown and Shelton personally, Shelton as maker of the notes and Brown on his assumption. Dismissal of Shelton was tantamount to releasing him on the personal obligation, and substituting Brown's personal obligation of assumption.

"Nothing is clearer in our law," as pronounced by our Supreme Court in Stone v. Jackson, 109 Tex. 385, 210 S.W. 953, 954, "than that the community property of the husband and wife is subject to the payment of the debts contracted by either of them during the marriage * * * and that the heirs of the wife, on her death, are entitled, not to one-half of the community property as it may then exist, but to one-half of what may remain, after the discharge of the debts to which such property is liable. * * * It is equally clear that the husband is not only ordinarily entitled to the exclusive management and disposition of the property of the community estate during the marriage, but that such right or power of management and disposition, for the purpose of discharging the ordinary debts of the community estate, continues and is likewise exclusive, after the death of the wife; it having been determined that this right or power of the surviving husband overrides that of the administrator of the estate of the wife."

It necessarily follows that the proceeds of the sale of the nine acres in any theory of the case constituted a community asset in the hands of Brown which he was entitled to hold and administer until the community debts had been discharged, and was subject in his hands to the rights of community creditors. The only interest of the heirs of his wife in any of the community assets was in the residue after payment of community debts.

We think it unnecessary to determine the status of Mrs. Stark's interest in the nine acres under the deed of conveyance. The deed was executed by Brown for the purpose, in part at least, of discharging community debts; and the notes in issue, if not in fact given to Brown by his children, constituted a community asset, which Brown had a right to administer, and which was charged with community debts. It may be assumed for the purposes of this case that only a nine-tenth undivided interest in the nine acres passed by the deed to the Starks, and that Mrs. Stark's interest as an heir of her mother was not affected thereby. Such interest, however, would still be subject to community debts. Whether the vendor's lien securing the notes attached to that interest is a question that can properly be raised whenever the lien is sought to be enforced. No rights of innocent purchasers could intervene, and there is therefore no ground for equitable relief.

The trial court's judgment is affirmed.